UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA DELGADO BARRON,<br>　　　　　　　　　　Petitioner,<br>v.<br>MATTHEW D. KENDALL,<br>　　　　　　　　　　Respondent. | Case No.: 20-cv-00648-AJB-KSC<br><br>**ORDER DISMISSING PETITIONER'S PETITION FOR THE RETURN OF THE CHILD (Doc. No. 1)** |

Before the Court is Petitioner Pamela Delgado Barron's ("Petitioner") Verified Petition for Return of the Child ("the Petition"), filed on April 2, 2020, against Respondent Matthew D. Kendall ("Respondent"). (Doc. No. 1.) Petitioner seeks the return of her five year old child, S.D. ("the Child") to Mexico under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and the International Child Abduction Remedies Act ("ICARA"). Additionally, on April 3, 2020, Petitioner filed a "Memorandum of Points and Authorities in Support of Order to Show Cause Under the Hague Convention for the Scheduling of an Expedited Hearing." (Doc. No. 3.) The Court ordered Respondent to show cause as to why the Petition should not be granted, scheduled an expedited hearing (Doc. No. 6), and instructed the parties to specifically address the issue of abstention at the hearing, (Doc. No. 17). The hearing on the order to show cause was held on May 6, 2020. As set forth below, the Court **VACATES** the Court's prior order to show cause, **ABSTAINS** from ruling on the Petition, and **DISMISSES** the Petition.

1

## I. BACKGROUND

Petitioner is a Spanish citizen, and resident of Mexico. (Petition ("Pet."), Doc. No. 1 ¶ 9.) Respondent is a United States citizen. (*Id.*) Petitioner and Respondent were married on November 11, 2006 in Huntington Beach, California. (*Id.*) Petitioner and Respondent have one child together, S.D., born on March 7, 2015 in Mexico. (*Id.* ¶ 10) Petitioner alleges Respondent, Petitioner, and the Child resided in Rosarito, Mexico from the time the Child was born until Respondent wrongfully removed her to the United States. (Doc. 1-2 at 26.) The Child has purportedly not lived in any other location besides Rosarito, Mexico. (Pet. ¶ 10.) Petitioner alleges that on January 12, 2020, Respondent removed the Child from Rosarito, Mexico to San Diego, California without Petitioner's consent. (*Id.* ¶ 11, 16.) Petitioner was allegedly given no notice that Respondent intended to relocate permanently. (*Id.*) Furthermore, Respondent apparently made no effort to secure custody and visitation orders in Mexico. (*Id.* ¶ 17.)

On January 21, 2020, Respondent filed for legal separation of marriage in San Diego Superior Court, claiming residency and child custody jurisdiction existed. (*Id.*) On January 23, 2020, Respondent applied *ex parte* to the state court for an emergency custody order. (Doc. No. 1-2, Ex. E.) In his declaration in support of the *ex parte* request, Respondent alleged Petitioner drives while intoxicated, with the Child in the vehicle, and uses methamphetamine while the Child is in her care. (Doc. No. 1-2 at 31.) Respondent's request for *ex parte* relief was denied by the state court for lack of emergency jurisdiction. (Doc. No. 1-2, Ex. E.)

On February 21, 2020, Petitioner appeared *ex parte* before the San Diego Superior Court to request an emergency custody order to immediately return the Child to Mexico. (*Id.* ¶ 21; Doc. No. 1-2, Ex. H.) That same day, the state court issued a temporary emergency custody and visitation order, finding that the Child "shall remain in the custody of the father." (Doc. No. 1-2 at 44.) In the state court's ruling on Petitioner's *ex parte* request, the state court also recognized that the case was subject to the Hague Convention. (*Id.*) Petitioner states that although no Petition for Return of the Minor Child had been filed by

Petitioner at that point, the state court set the matter for a "Hague status conference." (*Id.* at 45.) The state court held a status conference, and the matter was initially scheduled for a Hague evidentiary hearing on March 19, 2020. The evidentiary hearing was subsequently rescheduled to April 10, 2020 due to the state court closure related to the COVID-19 pandemic. The San Diego Superior Court then announced multiple extensions of the court closure. Due to these closures, the hearing has not been held.

## II. PROCEDURAL HISTORY

The Petition for the Return of the Child before this Court was filed on April 2, 2020. (Doc. No. 1.) The next day, Petitioner also filed a memorandum of points and authorities in support of an order to show cause under the Hague Convention for the scheduling of an expedited hearing. (Doc. No. 3.) Petitioner requested, among other things, (1) an expedited hearing, (2) an order vacating the San Diego Superior Court's temporary emergency custody and visitation order, and (3) an order for the return of the Child to Mexico. (Doc. No. 3 at 4.) The expedited hearing was scheduled, and Respondent was ordered to show cause why the Petition should not be granted, and why the Court should not vacate the state court order. (Doc. No. 6 at 6.) On April 21, 2020, Petitioner filed an *ex parte* motion for an order staying the San Diego Superior Court proceedings, and again, for an order vacating the temporary emergency custody and visitation order. (Doc. No. 9.) Petitioner applied for *ex parte* relief because Respondent represented to Petitioner he was going to apply *ex parte* to the state court for an expedited Hague evidentiary hearing. (*Id.* at 2.) The state court denied Respondent's request, stating there was no legal emergency. (Doc. No. 11 at 3.) Based on this, the Court denied as moot Petitioner's *ex parte* request for a stay, and also denied without prejudice Petitioner's *ex parte* request for the Court to vacate the temporary emergency custody and visitation order. (Doc. No. 17.)

Then, on April 23, 2020, Respondent filed a response to the Court's order to show cause. (Doc. No. 13.) Petitioner replied on April 27, 2020. (Doc. No. 14.) The Court instructed the parties to address the issue of abstention and held a hearing on the order to show cause on May 6, 2020. This order follows.

## III.   DISCUSSION

The issue regarding abstention presents questions of first impression, particularly in light of the unprecedented COVID-19 global pandemic, and related state and federal court closures. In showing cause as to why the Petition should not be granted, Respondent contends the Court should abstain because the Hague Convention proceedings commenced in San Diego Superior Court on February 21, 2020 and would have proceeded to a hearing but for the COVID-19 related state court closures. (Doc. No. 13 at 2.) While Petitioner did not formally file a Hague petition in state court, Respondent argues the state court sua sponte set an evidentiary hearing under the Hague Convention, and Petitioner did not object despite multiple opportunities to do so. (*Id.*) Respondent also contends Petitioner's action in filing the Petition in federal court after the state court set the matter for a Hague hearing demonstrates forum shopping. In Respondent's view, Petitioner filed her Petition in federal court after the state court issued an unfavorable temporary custody and visitation order. (*Id.* at 3.)

Petitioner, on the other hand, argues that this Court should not abstain because she did not formally file a Petition in state court. (Doc. No. 14 at 3.) Petitioner maintains that under the Hague Convention and ICARA, it is her choice whether to bring the Petition in a state or a federal forum. (*Id.* at 3–4.) From Petitioner's view, the state court's raising of the Hague matter sua sponte was impermissible, and in any event, even if the issue was properly raised, it was never litigated before the state court. (*Id.* at 5.) Therefore, Petitioner asserts that the instant Petition is properly before the Court, and the Court should not abstain from ruling on it. The Court addresses the issues of abstention below.

### A.   The San Diego Superior Court's Sua Sponte Setting of the Hague Hearing and Petitioner's Acquiescence

Naturally, the first question this particular abstention issue presents is whether the Hague matter is properly before the San Diego Superior Court. Whereas Petitioner's contention is that the state court had no authority to sua sponte raise the Hague issues, (Doc. No. 14 at 3), Respondent argues the Hague issues are properly before the state court

because Petitioner essentially agreed to the state court's jurisdiction to hear the Hague matter, (Doc. No. 13 at 2). The Court finds Respondent's position persuasive.

As an initial matter, both parties do not cite any authority, and the Court is not aware of such authority explaining whether a court may raise Hague issues sua sponte. Rather, case law and statutory authority only provide guidance as to *where* and *how* a petitioner may seek to file a Hague petition. For example, Ninth Circuit case law states, "[u]nder the Hague Convention and ICARA, [Petitioner] may choose to bring [her] Hague Convention claim in either federal or state court." *Holder v. Holder*, 305 F.3d 854, 865 (9th Cir. 2002); 42 U.S.C. § 11603(a). Additionally, ICARA provides, "[a]ny person seeking to initiate judicial proceedings under the Convention for the return of a child . . . may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction. . . ." 22 U.S.C. § 9003(b).

Notwithstanding the lack of clear authority on whether a court may sua sponte set a Hague hearing, a fair and complete review of the issue requires further background on the state court proceedings. On February 20, 2020, Petitioner filed in state court an *ex parte* application requesting the return of the Child to Mexico under the state court's temporary emergency jurisdiction. (Doc. No. 13 at 3–4.) A hearing was scheduled for the following day. (*Id.*) At the February 21, 2020 *ex parte* hearing, the parties accused each other of domestic violence. (*Id.*) At the outset of the hearing, San Diego Superior Court Judge McKenzie noted the Hague issues Petitioner raised in her *ex parte* pleadings and then sent the attorneys/parties outside of the courtroom to meet and confer. (Doc. No. 13-1 at 2–3.) Due to the allegations of domestic violence, Judge McKenzie then held an evidentiary hearing that day, and issued a temporary custody and visitation order. (Doc. No. 13 at 3–4.) Judge McKenzie found that Petitioner had been abusing alcohol, possibly illegal drugs, and had driven inebriated with the Child in the vehicle, without a valid driver's license, or insurance. (*Id.*) As such, Judge McKenzie ordered that the Child remain in the United States in Respondent's care, and granted Petitioner supervised visitation and daily FaceTime calls. (*Id.*) At the conclusion of the evidentiary hearing, Judge McKenzie set a

status hearing before San Diego Superior Court Judge Mangione, stating he was the "designated Hague Judge." (*Id.*) Judge McKenzie explained the purpose of the status hearing was to schedule an expedited hearing under the Hague Convention. (*Id.*)

The status hearing was held before Judge Mangione on March 9, 2020, and Judge Mangione scheduled an evidentiary hearing under the Hague Convention for March 19, 2020. (*Id.*) However, because of the COVID-19 pandemic, Judge Mangione rescheduled the evidentiary hearing. (*Id.*) But due to the continued state court closure, the hearing has not occurred. Respondent emphasizes Petitioner did not object to the setting of the Hague hearing, although Petitioner had at least four opportunities to do so between Judge McKenzie's evidentiary hearing and the rescheduling of the Hague hearing by Judge Mangione. (*Id.*)

Against this backdrop, whether or not the state court had authority to sua sponte set the Hague hearing, there is strong support that Petitioner waived any argument that she opposed the litigation of the Hague issues in state court. *See Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 559 (9th Cir. 2016) ("A waiver is an intentional relinquishment or abandonment of a known right or privilege. It can preclude the assertion of legal rights. An implied waiver of rights will be found where there is 'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved.") At oral argument, Petitioner represented that in between the time which the state court heard her *ex parte* application, and the scheduling of the Hague hearing, Petitioner intended to file a Hague petition in federal court. In response, Respondent countered that this was never brought to his attention or that of the state court. The Court agrees that there is no support or evidence that a federal Petition at that point was imminent. To the contrary, Petitioner had from February 20, 2020—the date the state court raised the Hague issue—to either object to or to file a federal petition. But Petitioner did not do so until April 2, 2020, when it was evident the Hague hearing was going to be postponed indefinitely due to the COVID-19 state court closures. Also, Petitioner mentioned in her state court *ex parte* application that "San Diego is not the proper place for court proceedings and I will be challenging this Court's ability

6

to hear our case." (Doc. No. 1-2 at 47.) Tellingly, Petitioner did not indicate she intended to file the Petition in federal court. *See Barzilay v. Barzilay*, 536 F.3d 844, 852 (8th Cir. 2008) (noting that the petitioner "informed the state court that he intended to file a Hague petition in federal district court to litigate the merits of the Hague issues in that forum"). Instead of raising any sort of objection, Petitioner instead consented to the state court's jurisdiction to adjudicate the Hague matter, and agreed to the state court's scheduling of the Hague evidentiary hearing.

Although not raised in her briefs, Petitioner cited to *Barzilay v. Barzilay*, 536 F.3d 844 (8th Cir. 2008) at the order to show cause hearing as support that a court may not sua sponte raise Hague matters. In *Barzilay*, the father sought the return of his children to Israel by filing a Hague petition in federal court. *Id.* at 846. The mother previously petitioned a state court to modify custody provisions in their Missouri divorce decree. *Id.* The father moved to dismiss the mother's petition on the grounds that the state court lacked jurisdiction over the children's custody because of a prior decree issued by an Israeli court. *Id.* The father did not file a Hague petition in state court. *Id.* at 849. The state court issued an order denying the father's motion to dismiss and sua sponte ruled on the merits of the Hague issue by stating that "[t]he mere presence of the minor children on vacation in Israel is insufficient to establish a 'habitual presence' [under ICARA]." *Id.* The mother moved to dismiss the federal action for failure to state a claim. *Id.* at 846. The district court abstained under *Younger*, concluding the father had an adequate opportunity to litigate his Hague claims in the ongoing state court proceedings, and the state court issued a ruling on the merits of the Hague issue. *Id.*

The Eighth Circuit reversed the district court, holding that abstention was improper because the Hague issue was not raised by either parties and the father did not have the opportunity to litigate the Hague issue. Specifically, the court explained:

> The record shows that throughout the state court proceedings [the father] emphasized the limited nature of his argument as being only jurisdictional. [The father] never engaged in an argument in the state court on the merits of the Hague Convention considerations—habitual residence and wrongful

7

      removal. ***Rather, he informed the state court that he intended to file a Hague petition in federal district court to litigate the merits of the Hague issues in that forum***.
*Id.* at 852 (emphasis added).

      The instant matter before the Court is distinguishable from *Barzilay*. Here, Petitioner had at least four opportunities to either file a federal petition or to object to the state court setting of the Hague hearing: (1) before Judge McKenzie held an evidentiary hearing on February 21, 2020, (2) after Judge McKenzie's ruling and Hague order that same day, (3) prior to the March 9, 2020 status conference before Judge Mangione wherein the Hague evidentiary hearing was scheduled, and (4) when Judge Mangione's clerk called to reschedule the evidentiary hearing in light of the COVID-19 related court closure. (Doc. No. 13 at 4.) But unlike the father in *Barzilay*, Petitioner here never stated her intent to file her Hague Petition before the federal court. To the contrary, the record supports that Petitioner acquiesced and consented to the state court's jurisdiction to hear the Hague matter. Petitioner agreed to the setting of an expedited evidentiary hearing on the Hague issue, and but for the COVID-19 court closures, nothing in the record suggests Petitioner would have objected or have been denied the opportunity to litigate the Hague issue. Thus, Petitioner waived her rights to choose a federal forum, and the Hague matter was properly before the state court. *See Tohono O'odham Nation*, 818 F.3d at 559 ("An implied waiver of rights will be found where there is 'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved.").

      **B.**    **Abstention**

      Having determined that the Hague matter was properly before the San Diego Superior Court, the Court next addresses whether it should abstain from hearing the Petition under either the *Younger* or *Colorado River* abstention doctrines.

      The Ninth Circuit has held that "[b]ecause the federal courts' obligation to adjudicate claims within their jurisdiction is virtually unflagging, abstention is permissible only in a few carefully defined situations with set requirements." *U.S. v. Morros*, 268 F.3d 695, 703 (9th Cir. 2001) (quotations omitted). "Whether it is labeled comity, federalism, or some

other term, the policy objective behind *Younger* abstention is to avoid unnecessary conflict between state and federal governments." *Id.* at 707 (quotations omitted). The *Younger* doctrine, named after the United States Supreme Court case *Younger v. Harris*, requires federal courts to abstain from intervening in pending state judicial proceedings when (1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) the state proceedings provide the plaintiff with an adequate opportunity to raise federal claims. 401 U.S. 37, 39–53 (1971).

The three abstention elements under *Younger* are present in this case. First, the Hague matter is still properly before the San Diego Superior Court. While the state court's closure remains in place, nothing in the record indicates that Petitioner will be deprived of the opportunity to litigate her Hague issues once the state court is reopened and able to do so. *See Witherspoon v. Orange Cty. Dep't of Soc. Servs.*, 646 F. Supp. 2d 1176, 1180 (C.D. Cal. 2009) ("Once the juvenile court's dependency proceeding concludes, the state court will finish adjudicating Ms. Witherspoon's ICARA petition."). Second, these proceedings implicate important state interests. This case concerns domestic relations between a husband and wife married in Southern California and the safety and welfare of a minor child. The Ninth Circuit has held that "the realm of domestic relations is and has been traditionally governed by state law." *Kitchens v. Bowen*, 825 F.2d 1337, 1341 (1987) (holding that *Younger* abstention was permissible in cases dealing with the domestic realm). Here, these state interests are particularly salient where the state court has already issued a temporary emergency custody and visitation order to protect the Child from allegations of mistreatment and abuse. (Doc. No. 13-1 at 6.) Third, the state proceeding—once the state court is reopened—gives Petitioner an adequate opportunity to raise the issues she seeks to raise here in federal court. Particularly, the state court has jurisdiction to hear the Hague issues as ICARA and the Hague Convention grant concurrent jurisdiction to state and federal courts. *See* 42 U.S.C. § 11603(a). And, there is no indication that the state court would not provide Petitioner with the opportunity to fully litigate her Hague claim. In fact, the state court has even designated a "Hague Judge" for this very purpose,

9

and attempted to set the matter for a Hague evidentiary hearing before the court closure. (Doc. No. 13 at 3–4.)

Further, an analysis of abstention under *Colorado River* does not compel a contrary result. Under *Colorado River*, the Supreme Court addressed abstention for the sole purpose of avoiding duplicative state and federal litigation. Under *Colorado River*, considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter. *Colorado River*, 424 U.S. at 817; *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912 (9th Cir. 1993). "When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). The Ninth Circuit has recognized eight factors for assessing the appropriateness of a *Colorado River* stay or dismissal: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 818).

In running through the *Colorado River* factors, the Court concludes that dismissal of the Petition is appropriate. First, the Hague issue was first raised in state court, with Petitioner acquiescing to the state court's jurisdiction to hear the Hague matter. Second, although Hague petitions involve questions of federal law, state courts have been equipped with concurrent jurisdiction to hear Hague petitions and "can adequately protect the rights

of the federal litigants." Third, Respondent has raised legitimate concerns regarding forum shopping, evidenced by the fact that Petitioner did not file the Petition in this Court until after availing herself of state court, and receiving an unfavorable ruling. Lastly, there is no doubt that the state court "will resolve all issues before the federal court" given the state court specifically designated a "Hague Judge" in addition to scheduling a Hague evidentiary hearing before those proceedings were postponed by the COVID-19 pandemic.

Petitioner cites to *Yang v. Tsui*, 416 F.3d 199 (3d Cir. 2005), and similar cases, for the proposition that if the Hague issue has been "raised but not litigated" in state court, a federal court should not abstain from hearing a Hague Petition. *Yang*, 416 F.3d at 202. However, a close review of the facts, particularly in light of the COVID-19 court closures, demonstrates that this case is distinguishable. In *Yang*, the mother was a resident of British Columbia and the father of the United States. *Yang*, 416 F.3d at 201. A dispute as to the custody of their daughter led each party to file for custody, resulting in an award of custody to the father in the United States and an award of custody to the mother in British Columbia. *Id.* After unsuccessfully attempting to secure a voluntary return of the child, the mother filed a Hague petition in federal district court. *Id.* Citing *Younger*, the district court abstained from consideration of the Petition proceedings. *Id.* at 200. The Third Circuit noted, "[t]he first question in applying the *Younger* abstention doctrine to a Petition raising Hague Convention claims in federal court is whether the federal proceeding will interfere with an ongoing state proceeding." *Id.* at 202–03. Ultimately holding that abstention was inappropriate, the court went on to reason:

> The parties agree that [the mother] has not raised the Hague Convention in state court. In addition, the state court has entered an interim custody order in favor of [the father] but has held no hearings and made no findings with regard to the Hague Convention. Thus, the District Court's adjudication of the Hague Convention Petition would have been consistent with the statutory provisions and would not have interfered with the state court proceedings.

*Id.* at 204.

Unlike *Yang*, the evidence here suggests Petitioner would have had a full and fair

opportunity to litigate her Hague issues but for the COVID-19 related state court closure. Indeed, Petitioner agreed to the setting of a Hague hearing before the designated Hague judge in state court. While the court closures associated with the global pandemic postponed that hearing, there is nothing to suggest that Petitioner will not have the opportunity to fully litigate her Hague Petition once the state court reopens. In fact, if the Court does not abstain, there is a likelihood "the federal proceeding will interfere with an ongoing state proceeding" given that the state court has invoked temporary emergency jurisdiction to protect the Child, convened a status conference on the Hague issue, and has attempted to set the Hague trial date. *Yang*, 416 F.3d at 202–03. Thus, although the Hague issue has been "raised but not litigated" in state court, the postponement of the opportunity to litigate is only temporary in light of the pandemic. *Yang*, 416 F.3d at 202.

## IV. CONCLUSION

In the interest of comity, the conservation of judicial resources, and to avoid conflicting judgments, the Court abstains from ruling on the Petition under both *Younger* and *Colorado River*. Petitioner acquiesced to the state court assuming jurisdiction of the Hague matter, and but for the pandemic, the record indicates Petitioner would have received her Hague hearing. The COVID-19 pandemic has indeed presented many difficult and unprecedented challenges, including both state and federal court closures and the suspension of both state and federal trials. However, the Court concludes that the state court is an adequate forum for Petitioner to fairly and fully litigate her Hague issues once the state court has reopened. Thus, the Court **VACATES** the Court's prior order to show cause, **ABSTAINS** from ruling on the Petition, and **DISMISSES** the Petition. All other relief requested in the Petition, particularly, Petitioner's request to vacate the state court's order is also **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: May 18, 2020

Hon. Anthony J. Battaglia
United States District Judge